The will of testator gave to Passmore Williamson, the executor, the residue of the estate in trust, "to manage the whole thereof carefully, so as to preserve and keep the same productive of income," and after deducting taxes, repairs and other expenses, including a commission of five per cent. to the accountant, to pay over the net income half-yearly in equal *Page 443 
shares to testator's wife and four children, one of whom is the accountant. In 1873 the executor's first account was filed and referred to an auditor. Counsel for two of the daughters of decedent requested the auditor to direct the sale of certain securities and the conversion of the proceeds into legal investments. The auditor declined so to direct, on the ground of want of authority. For various reasons, with which, however, counsel for exceptants are not chargeable, the report of the auditor was not filed until the present year, when the exceptions to his refusal to direct a sale were argued and dismissed. Upon the audit of the present accounts, the second and third in order, the judge was asked to surcharge the accountant with the market value of the stocks at the date of the demand for their sale, together with the interest which would have accured if they had then been converted into legal investments. The refusal to surcharge is the subject of one of the exceptions. In the absence of any notice to the accountant to sell and re-convert the case would be comparatively free of difficulty. The discretion of an executor or trustee is necessarily large, and when honestly exercised, is viewed by the Courts, as the cases rather emphatically phrase it, with tenderness. His first duty, unless otherwise instructed, ordinarily is to sell the personal property of his decedent. But in the varying circumstances peculiar to the estate or to the time, a high sense of duty may compel him to disregard a rule which was really meant for his protection, and to assume a responsibility from which it would have freed him, in order to save the estate from possible disaster. There is nothing new in this principle. Judge King said: "Although in general it is an act both of duty and prudence for an administrator to turn the testator's goods and chattels promptly into available funds yet cases may be readily imagined in which too sudden a sale would be a miafest breach of trust;" Bosio's Estate, 2 Ash., 437. In Neff's Appeal, 7 P. F. Sm., 91, Judge Sharswood vindicated the delay of an executor by saying that if he had at once proceded to judgment and execution the whole debt would have been probably lost. And he added: "He should have been discharged with a just enconium on his wise forethought and successful fidelity, instead of being condemned *Page 444 
as guilty of supine negligence or willful neglect." It would be affectation to collect authorities upon a point which appeals so directly to common sense. In the present case it is difficult to divide the two-fold function conferred upon the accountant. As executor he was bound, in the absence of controlling reasons to the contrary, to convert the unemployed assets into legal securities; as trustee he was directed to "manage the estate carefully, so as to preserve and keep the same productive of income." There is no necessary conflict between the two caracters or the two sets of duties, but it is very evident that the one permitted a larger exercise of discretion than the other. Properly to weigh the conduct of the accountant, it must be noted that he had been jointly engaged in business for many years with his father, the testator; that the latter had invested largely in certain favorite and profitable securities, and that these securities at his death had come in bulk into the hands of the accountant. His predilection for these investments was fairly the result of his intimate association with the testator, and the honesty of his motives, in declining to substitute for them legal securities which would be more secure, but less profitable, may be gathered from the fact that the right administration of the estate was as essential to his interests as to those of the exceptants. But it cannot be doubted for a moment that the latter had a right to insist upon a literal compliance with the terms of the statutes defining legal investments, and it would be a most dangerous policy to uphold a life tenant in the enjoyment of high dividends to the peril of those in the remainder. Even to so plain a doctrine as this, however, there may be some exceptions. In the present case, for example, two of the co-legatees demanded a sale and conversion of the securities left by the testator, but the auditor refused to consider the motion, and, acting under the advice of practiced counsel, the excutor chose to disregard it. If they believed that the interests of the estate were seriously imperilled by this refusal, the parties in interest had an open door to relief through this Court. But they quietly allow five years to pass, during all of which time the reprot of the auditor lay unnoticed, and, at the end of that interval, when asked if they still insisted upon a sale, they *Page 445 
declined to apply for it. This delay has robbed their demand of all its original force, nay may almost be regarded as a silent approval of the course pursued by the accountant. At all events in determining the measure of his responsibility, we cannot consider a demand which was never seriously pressed. The single test to be applied to his conduct is, was it characterized by good faith and common prudence? Apart from the fact that the accountant placed himself under the direction of counsel, which according to Vez. vs. Emery, 5 Ves., 141, would of itself have saved him from liability; the facts found by the auditing judge go far to vindicate his action upon both grounds.
The estate of the testator, although large, was not free from complications, owing to the fact that included in its funds were those of various trusts, which had been committed to the testator, and of which the accounts kept were not, perhaps, as clear as they should have been. It was, therefore, long uncertain how large a proportion of the assets would be available for permanent investment, and the securities in which the bulk of the estate was invested, were, nearly all of them, among the best known and most trusted in the market. No one could have foreseen in 1873, the decline which afterwards took place in some of the stocks; and after the decline had fairly set in, the accountant might justly have been chargeable with folly or worse if he had sold more than he could help at what would have been a ruinous sacrifice. It must be remembered, also, that the question ofmala fides is agitated not by creditors, but by legatees, and only by some of them, and as to them a more liberal view of an accountant's discretion will be taken than as against creditors; McNair's Appeal, 4 R., 148; Bruner's Appeal, 7 P.F.S., 46.
One other point may be adverted to as bearing upon the question of good faith. In refraining from a sale and conversion of the securities, the accountant was depriving himself of a rate of compensation which would otherwise have been awarded to him, and, in this regard, his sense of duty, even if a mistaken one, was paramount to his sense of personal interest. Without further elaboration, or reference to authorities, *Page 446 
which are abundant and clear upon the positions here assumed, the exceptions upon this point are dismissed.
With the failure to establish the charge of gross negligence or of bad faith must fall the demand for a disallowance of commissions to the accountant. The rate of his commissions was fixed by the will at five per cent., and was properly allowed at that figure in the adjudication. For the reasons stated by the auditing judge the counsel fee paid by accountant nwas a reasonable charge, and the exception to its allowance must be dismissed.
The mingling by the accountant of the funds of the estate with his own, was also the subject of exception. Nothing can be said in defence of this practice, and it is usually so indicative of negligence or fraud as to call for the infliction of a penalty. Interest upon the funds so perverted, or the profits which they had earned for the accountant, would be at once awarded to the estate, if either the amount used or the profit were shown. In this case, however, the commingling of funds arose from the fact that the accountant frequently paid claims against the estate with his own moneys, and repaid himself with the first moneys of the estate thereafter received by him; but his record of these transactions was so kept that it was almost impossible to ascertain whether at any given time the balance of cash on hand belonged to himself or to the estate. It was not denied that when his account was finally made up, every item of credits was satisfactorily vouched, and it was not pretended that he has failed to charge himself with every asset which had come into his hands. Moreover, it was not shown that any loss to the estate or profits to himself had accrued.
The error of the accountant, and it was a not serious one, resolves itself into an error of book-keeping; but it was free from suspicion of fraud, or, as we have seen, from proof of injury. It would be a harsh measure to visit upon such a transaction the punishment which is due only to a case of gross disregard of duty. The exception is disallowed.
Exceptions dismissed and adjudication confirmed. *Page 447